UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED
SDNY DOCKET UNIT

2018 OCT 10 PM 4: 04

ANTHONY ZAPPIN,

     Plaintiff,

 -against-

CLAIRE COMFORT,
ROBERT WALLACK,
THE WALLACK FIRM, P.C.,
HARRIET NEWMAN COHEN,
COHEN RABIN STINE SCHUMANN LLP,
COMPREHENSIVE FAMILY SERVICES,
INC.,

     Defendants.

No. 18 Civ. 1693 (RWS)

**<u>DECLARATION OF CLAIRE K.
COMFORT IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE
TO FILE AN AMENDED
COMPLAINT AGAINST
DEFENDANT CLAIRE COMFORT</u>**

  1.  I am a defendant named in this action. I offer this declaration in opposition to

Plaintiff's Motion for Leave to File an Amended Complaint Against Defendant Claire Comfort,

which was filed on September 25, 2018.

  2.  Annexed hereto as **Exhibit 1** is a copy of a document entitled "Abusive Litigation

and Domestic Violence Survivors," Legal Voice Violence Against Women Workgroup, DV

Manual for Judges 2015, Washington State Administrative Office of Courts, which is available

online at: https://www.courts.wa.gov/content/manuals/domViol/appendixH.pdf (last accessed

Oct. 5, 2018).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-10-18

Executed: Washington, DC
October 6, 2018

I declare under penalty of perjury that the foregoing is true and correct.

_Claire Comfort_

Claire K. Comfort
*Pro Se Defendant*
1212 4th Street SE, Apt. 801
Washington, DC 20003
(253) 592-1578

# Exhibit 1

# APPENDIX H

## ABUSIVE LITIGATION AND
## DOMESTIC VIOLENCE SURVIVORS
### by Legal Voice Violence Against Women Workgroup[1]

These materials are intended to assist in recognizing and addressing abusive litigation against domestic violence survivors. The term "abusive litigation" includes the misuse of court proceedings by abusers to control, harass, intimidate, coerce, and/or impoverish survivors. Although the practice is common, it does not have a generally recognized name. It has also been described as legal bullying, stalking through the courts, paper abuse, and similar terms.

Court proceedings can provide a means for an abuser to exert and reestablish power and control over a domestic violence survivor long after a relationship has ended. The legal system that a survivor believed would provide protection becomes another weapon that an abuser can use to cause psychological, emotional, and financial devastation.

Abusive litigation against domestic violence survivors arises in a variety of contexts. Family law cases such as dissolutions, parenting plan actions or modifications, and protection order proceedings are particularly common forums for abusive litigation. It is also not uncommon for abusers to file civil lawsuits against survivors, such as defamation, tort, or breach of contract claims. Even if a lawsuit is meritless, forcing a survivor to spend time, money, and emotional resources responding to the action provides a means for the abuser to assert power and control over the survivor.

It is important for courts to recognize when litigation is being misused as a tool of abuse and to take appropriate steps to curb such actions.

## I.     Recognizing Abusive Litigation and Its Impact on Survivors

### A.     Common Abusive Litigation Tactics

Abusers may use a wide range of tactics against domestic violence survivors in the legal system. Domestic violence survivors and advocates report that common tactics used by abusers include:

#### 1.     Protection Order Cases

---

[1] The Legal Voice Violence Against Women Workgroup conducted numerous interviews with survivors of domestic violence, advocates, attorneys, and judicial officers in drafting these materials. Workgroup members who contributed to these materials include Antoinette Bonsignore, Erica Franklin, Michelle Camps Heinz, Bess McKinney, Mary Przekop, Evangeline Stratton, and David Ward.

- Portraying themselves as the victim by seeking their own protection orders against the survivor and/or the survivor's friends and family.

2. **Family Law Cases**

- Seeking sole or primary custody of a child as punishment or retaliation for leaving, seeking a protection order, or seeking court-ordered financial support.

- Filing repeated motions to modify the terms of parenting plans, child support orders, or protection orders.

- Bringing contempt motions against a survivor without cause.

- Portraying the survivor as an unfit and incompetent parent, including making requests for mental health evaluations in an attempt to undermine the survivor.

- Reneging on agreements developed through mediation or settlement negotiations.

- Perpetuating the myth that women will fabricate domestic violence allegations and pursue a protection order simply for use as leverage in divorce and child custody proceedings.[2]

3. **General Litigation Tactics**

- Filing frivolous motions, appeals, motions for revisions, and motions for reconsideration of court orders.

- Attempting to re-litigate issues that have already been decided by the court.

- Bringing similar or parallel litigation in a different court or county after receiving unfavorable rulings.

- Abusing the discovery process by seeking embarrassing or irrelevant information about the survivor and by demanding excessive discovery.

---

[2] Joan Zorza, *Batterer Manipulation and Retaliation in the Courts: A Largely Unrecognized Phenomenon Sometimes Encouraged by Court* Practices, 3 Domestic Violence Report 67, 67 (1998).

- Delaying or protracting court proceedings as long as possible, such as by repeatedly seeking continuances or frequently changing attorneys, in order to prolong the abuser's control over the survivor and deplete the survivor's financial and emotional resources.

- Deliberately refusing to comply with court orders, forcing the survivor to spend money, time, and energy to enforce the orders.

**4.     Threats and False Reports**

- If the survivor is an immigrant, threatening to make reports to immigration authorities to have the survivor deported and possibly to separate the survivors from their children.

- Making false reports to Child Protective Services (CPS).

- Falsely reporting to the police and/or courts that the survivor is abusing drugs or alcohol or withholding court-ordered access to children.

**5.     Retaliatory Lawsuits**

- Suing a survivor for defamation if the survivor reports the abuse, or suing the survivor for other tort or breach of contract claims.

- Suing or threatening to sue anyone who helps the survivor, including friends, family, advocates, lawyers, and law enforcement officials.

**6.     Actions Against Judicial Officers and Attorneys**

- Attempting to have a judge disqualified from a case, filing judicial conduct complaints, and/or suing a judicial official after receiving an unfavorable ruling.

- Filing bar complaints or lawsuits against the survivor's attorney, in order to intimidate the attorney from continuing representation.

- Repeatedly contacting survivor's attorney in order to harass the attorney or to increase the survivor's legal fees

**B.    Impact of Abusive Litigation on Survivors**

Abusive litigation has serious impacts on survivors of domestic violence. Survivors and advocates report that effects of abusive litigation may include:

**1.    Loss of Trust in the Legal System**

Survivors who face abusive litigation come to view the legal system as a forum for abuse and lose trust in the legal system. These experiences may deter survivors from leaving abusive relationships or from seeking legal remedies or police assistance because doing so may expose them to protracted litigation or the loss of custody of their children.

**2.    Forced Contact With Abusers**

Court proceedings allow abusers to compel survivors to have contact with them after a relationship has ended, particularly in cases where a couple has children together. Litigation enables abusers to maintain control over survivors, especially when the survivor is self-represented and must confront the abuser in court alone every time a matter is heard. This can be particularly problematic when the abusive partner is self-represented and can directly question the survivor in court.

**3.    Coercion to Make Concessions in Order to End Litigation**

The threat of abusive litigation can be used to compel survivors to make concessions in order to end the litigation. This is particularly a danger in child custody and child support proceedings. Abusive litigation may lead to a survivor "relinquishing custody of the children, giving up demands for child support, giving in to less desirable resolutions in order to end the fight, or even returning to the batterer out of fear or necessity."[3]

**4.    Financial Impacts**

Abusive litigation often causes survivors financial devastation. Deliberately running up legal expenses is one of the most common strategies of abusers, in the hopes of leaving the survivor without representation and causing emotional distress and anxiety.

Survivors also suffer financial impacts if they are forced to miss work or pay for child care in order to appear in court. Some survivors report that they are

---

[3] Mary Przekop, *One More Battleground: Domestic Violence, Child Custody, and the Batterers' Relentless Pursuit of their Victims Through the Courts*, 9 Seattle J. Soc. Just. 1053, 1084 (2011).

unable to keep jobs because they must constantly appear in court or respond to legal filings.

Abusers may also try to use the resulting financial devastation against the survivor in custody disputes to suggest the survivor is now incapable of providing a stable and secure home because of a lack of financial resources.

### 5. Emotional and Psychological Impacts

Court proceedings are emotionally and psychologically difficult for many litigants. However, domestic violence survivors are particularly vulnerable when an abuser uses the litigation process as a tool of harassment and control.

Survivors report living in fear that they will be served with legal papers and forced to appear in court to defend themselves or to keep their children. They must keep meticulous records of all matters related to their children to be ready for the next time they face a motion for contempt or a parenting plan modification. They know that any action they take—starting a new relationship, being late to a custody exchange, making decisions about a child's education or medical care—may cause the abuser to file a new legal proceeding or motion against them.

### 6. Isolation from Support Networks and Attorneys

Abusers sometimes threaten to sue a survivor's friends, family members, advocates, or others who provide support to the survivor. Such threats can be an effective way to isolate a survivor from support networks.

Abusive litigation may also cause a survivor to lose legal representation. Many attorneys cannot continue to represent a survivor when faced with constant motions and court appearances, particularly if the survivor is unable to pay. In addition, threats by an abuser to sue or to file a bar complaint against the survivor's attorney may result in the attorney withdrawing from the case.

## C. Why Do Abusers Use Abusive Litigation?

Litigation is a way that abusers can attempt to reestablish and retain control over a survivor, particularly when other forms of contact with the survivor have been restricted. The need to reassert control after the survivor physically separates from the batterer manifests itself in litigation tactics that are designed to overwhelm the survivor's life.

Abusive litigation is often prompted by a survivor's decision to leave or separate. Trigger points may include filing for divorce or for a protection order, reporting physical abuse, or calling police for assistance.

### D.    Prevalence of Abusive Litigation Against Survivors

There is not yet statistical data regarding the prevalence of abusive litigation against domestic violence survivors. However, narrative studies describing abusive litigation tactics have noted its prevalence, as reported by domestic violence survivor advocates around the country.[4]

### 1.    Battered Mothers' Testimony Projects

The Battered Mothers' Testimony Project (BMTP) at the Wellesley Centers for Women[5] and the Arizona Coalition Against Domestic Violence Battered Mothers' Testimony Project[6] have documented abusive litigation from narrative research derived from domestic violence survivors.

The Wellesley BMTP involved interviews with 40 domestic violence survivors. The report concluded:

> [T]here are batterers who use the family court system as a tool for ongoing harassment, retaliation, and intimidation of battered mothers. This misuse of the court process often goes unpunished, resulting in financial as well as emotional harm to women and children. The specific litigation abuse tactics include filing multiple harassing, baseless, or retaliatory motions in court. . . . Nearly half of the survivors reported to us that their ex-partners made false allegations against them, such as accusing them of abusing, neglecting, or kidnapping the children, of denying the fathers visits with the children, of being a flight risk, and of using drugs. . . . Finally, more than half of the survivors stated that their ex-partners were using parallel actions in courts of different jurisdictions to manipulate the courts to their advantage.[7]

The Arizona BMTP involved interviews with 57 domestic violence survivors and found:

---

[4] Susan L. Miller and Nicole L. Smolter, *"Paper Abuse": When All Else Fails, Batterers Use Procedural Stalking*, 17 Violence Against Women 637 (2011).

[5] Battered Mothers' Testimony Project at the Wellesley Centers for Women, *Battered Mothers Speak Out: A Human Rights Report on Domestic Violence and Child Custody in the Massachusetts Family Courts* (Nov. 2002).

[6] Arizona Coalition Against Domestic Violence, *Battered Mothers' Testimony Project: A Human Rights Approach to Child Custody and Domestic Violence* (June 2003).

[7] Kim Y. Slote et al., *Battered Mothers Speak Out: Participatory Human Rights Documentation as a Model for Research and Activism in the United States*, 11 Violence Against Women 1367, 1387-88 (2005).

- By and large, the systems of control the perpetrator established pre-divorce, including physical and sexual violence and child abuse, were maintained post-separation with the added ability to use the court system to abuse the victims.

- 84% of the study participants "reported that their ex-partners continued to use money to control them, primarily through the creation of high legal expenses." In addition, participants reported that "the abuser used the legal system itself as a means of harassment and continued abuse."[8]

- In the words of one survivor: "The most horrible sufferings have been not only physical, they have been emotional, psychological and financial! He never stops harassing me—the courts are his legal playgrounds! He uses the courts to inflict suffering—he constantly and I do mean constantly has me in court—his lawyer helps him to wear us out. . . . The end is never coming—it never ends!"[9]

## 2. Reports from Washington Attorneys and Advocates

Attorneys and advocates in Washington who work with domestic violence survivors also report a high prevalence of abusive litigation against survivors. Reports include:

- An attorney who represents survivors indicated that nearly every case she takes involves abusive litigation, particularly in cases where the survivor had been self-represented. The attorney describes abusive litigation as a "constant barrage" that overtakes the survivor's life.

- Other attorneys report that abusers commonly "bury the survivor in documents by filing lots of motions," requiring frequent court appearances. "Survivors end up missing a lot of work and often end up losing their jobs."

- Another attorney stated that she has seen countless instances of abusive litigation against survivors in family law matters. Common tactics include seeking sole custody of children and prolonging litigation. She reports that such litigation "takes an enormous toll" and often results in survivors "relenting and giving in, just to make it stop."

---

[8]Arizona BMTP at 39.
[9]*Id.* at 88.

## II. The Court's Inherent Authority to Control Abusive Litigants

Courts have considerable authority to respond to abusive litigation tactics, while upholding litigants' constitutional rights to access to the courts. Much of this authority is based on the court's inherent authority to control the conduct of litigants.

### A. Courts Have Inherent Authority to Curb Abusive Litigation

Courts have inherent authority to facilitate the orderly administration of justice. RCW 2.28.010(3) provides that "[e]very court of justice has power... [t]o provide for the orderly conduct of proceedings before it or its officers."

This authority provides broad power for courts to address abusive litigation tactics. *Yurtis v. Phipps*, 143 Wn. App. 680, 693, 181 P.3d 849 (2008) ("In Washington, every court of justice has inherent power to control the conduct of litigants who impede the orderly conduct of proceedings. Accordingly, a court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process.").

This authority is also consistent with CR 1, which provides that Washington's Civil Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

### B. Exercising this Inherent Authority is Essential to Delivering Justice for Domestic Violence Survivors

In the absence of judicial intervention, domestic violence survivors facing abusive litigation tactics may be denied meaningful access to justice. *In re Marriage of Brown*, 147 Wn. App. 1020 (2008) (unpublished).[10]

By monopolizing limited resources, abusive litigants may also seriously impact the judicial system at large. *Yurtis*, 143 Wn. App. at 693 (recognizing "the potential for abuse of this revered system by those who would flood the courts with repetitious, frivolous claims which already have been adjudicated at least once"); *In re Sindram*, 498 U.S. 177, 179-180 111 S. Ct. 596, 597 (1991) ("The goal of fairly dispensing justice...is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests.").

To safeguard the integrity of the judicial system, courts have an obligation to restrain abusive litigants. *In re Marriage of Giordano*, 57 Wn. App. 74, 77-78, 787

---

[10] Several unpublished cases are cited in this chapter because there are few published cases regarding abusive litigation against domestic violence survivors. The reader is cautioned that unpublished decisions by Washington appellate courts are not precedential and may not be cited to the courts of Washington. GR 14.1.

P.2d 51 (1990) ("If access is to be guaranteed to all, it must be limited as to those who abuse it"); *cf. In re McDonald*, 489 U.S. 180, 184, 109 S. Ct. 993 (1989) ("A part of the Court's responsibility is to see that [judicial] resources are allocated in a way that promotes the interests of justice.").

## C.    Abusive Litigation May Be Restrained Without Compromising the Constitutional Rights of Litigants

There is no absolute and unlimited constitutional right of access to courts. *Giordano*, 57 Wn. App. at 77 (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 554 (3d Cir. 1985)); *accord In re Marriage of Lilly,* 75 Wn. App. 715, 719, 880 P.2d 40 (1994).

Due process requires "only that the individual be afforded a reasonable right of access, or a meaningful opportunity to be heard, absent an overriding state interest." *Yurtis*, 143 Wn. App. at 694; *see also Giordano*, 57 Wn. App. at 77. The requirement that litigation proceed in good faith and comply with court rules "has always been implicit in the right of access to the courts." *Giordano*, 57 Wn. App. at 77. Thus, within certain parameters, courts may limit access to the court system to abusive litigants while maintaining constitutional guarantees.

While the trial court may regulate access to the courts, it must ensure that "the party can still access the court to present a new and independent matter." *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753, 761 (2008). Similarly, an order restricting access to the courts must not be absolute and, instead, should provide a "safety valve for emergencies." *See Giordano*, 57 Wn. App. at 78; *Bay*, 147 Wn. App. at 762.

## D.    Courts Have Broad Authority to Fashion Injunctive Relief to Curtail Abusive Litigation.

Courts may issue far-reaching injunctive relief upon a specific and detailed showing of a pattern of abusive and frivolous litigation. *Whatcom County v. Kane*, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981); *see also Burdick v. Burdick*, 148 Wash. 115 (1928) (upholding order enjoining an action brought purely for vexatious purposes); *Yurtis*, 143 Wn. App. at 696 (barring litigant from "filing any appeals or further claims" against opposing party); *Giordano*, 57 Wn. App. at 78 (upholding trial court's imposition of moratorium on motions).

In fashioning injunctive relief, the trial court should avoid issuing a more comprehensive injunction than is necessary to remedy proven abuses. *Whatcom County*, 31 Wn. App. at 253. If appropriate, the court should consider less drastic remedies. *Id.*

Pursuant to CR 65(d), courts deploying injunctive relief to address abusive litigation must state the reasons for doing so. *Id.* (requiring a specific and detailed showing of a pattern of abusive and frivolous litigation); *Yurtis*, 143 Wn. App. at 693 (noting that proof of mere litigiousness is insufficient); CR 65(d). Finally, as noted above, an order restricting access to the courts must provide a "safety valve for emergencies" and may not bar "access to the court to present a new and independent matter." *Bay*, 147 Wn. App. at 657-62.

A state court may not enjoin a litigant from filing new actions in *federal* court. *Giordano*, 57 Wn. App. at 78-79.

Because the court has inherent power to rein in the conduct of disruptive litigants, the court may issue injunctive relief *sua sponte*. *Yurtis*, 143 Wn. App. at 693.

### E. Tools to Exercise Inherent Authority

RCW 2.28.010(3) provides a court with broad power to provide for the orderly conduct of proceedings before it or its officers. This provides courts considerable discretion and creativity in fashioning remedies to curb abusive litigants. *Yurtis*, 143 Wn. App. at 693. The list that follows is a non-exhaustive sampling of available mechanisms for combating abusive litigation.

- **Require authorization for the filing of new actions**. *See Harmon v. Bennett*, 126 Wn. App. 1064 (2005) (unpublished) (affirming trial court order prohibiting abusive litigant from filing further lawsuits without express permission from court); *In re Martin-Trigona*, 763 F.2d 140, 142 (2d Cir. 1985) (upholding order enjoining vexatious litigants from filing "any new lawsuit, action, proceeding, or matter in any federal court, agency, tribunal, committee, or other federal forum of the United States" without leave of the forum).

- **Impose conditions on the filing of new actions or appeals**. *Ng v. Quiet Forest II Condominium Owners Ass'n*, 92 Wn. App. 1026 (1998) (unpublished) (upholding trial court order enjoining litigant from filing new actions without meeting certain conditions where litigant had filed multiple duplicative lawsuits and had not responded to sanctions). *Lysiak v. Comm'r of Internal Revenue*, 816 F.2d. 311 (7th Cir. 1987) (requiring abusive litigant to seek the court's leave to appeal and, in so doing, certify that his appeal is taken in good faith and that the claims he raises are not frivolous, and that they have not been raised and disposed of on the merits by this Court in previous appeals).

- **Require abusive litigant to attach court opinions, previous filings, and/or order of injunction to all subsequent filings.** *Harrison v. Seay*, 856 F. Supp.

1275 (W.D. Tenn. 1994) (barring abusive litigant from filing future complaints without attaching a copy of the injunction and an affidavit listing all pending suits and all previous actions involving the same defendants).

- **Limit number of allowable filings.** *In re Marriage of Giordano*, 57 Wn. App. at 78 (upholding moratorium on motions until trial, with certain exceptions); *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988) (limiting number of allowable in forma pauperis petitions per month).

- **Require abusive litigant to post a bond for attorneys' fees at outset.** *Berry v. Deutsche Bank Trust Co. Americas*, 632 F. Supp. 2d 300, 307-08 (S.D.N.Y. 2009) (requiring plaintiff to post appeal bond based on history of duplicative and meritless filings and failure to pay previous fee awards).

- **Enjoin further actions or appeals.** *Burdick v. Burdick*, 148 Wash. 115 (1928) (upholding order enjoining an action brought purely for vexatious purposes); *Yurtis*, 143 Wn. App. at 696 (barring litigant from filing any appeals or further claims against opposing party).

- **Condition further proceedings on payment of attorneys' fees and/or sanctions.** *In re Marriage of Lily*, 75 Wn. App. at 720 (upholding trial court order prohibiting further proceedings until attorneys' fees award for intransigence had been paid); *Stevenson v. Canning*, 166 Wn. App. 1027 (2012) (unpublished) (conditioning abusive litigant's right to participate further in proceedings on payment of sanctions owed).

- **Retain jurisdiction over a matter to control abusive litigation tactics.** *In re Marriage of Hollingshead*, 157 Wn. App. 1039 (2010) (unpublished) (upholding trial court's retention of jurisdiction as a proper restriction on abusive litigant).

- **Impose sanctions.** *State v. S.H.*, 102 Wn. App. 468, 8 P.3d 1058 (2000) (discussing court's inherent authority to sanction litigation conduct outside the context of Rule 11); *see generally* CR 11 (allowing sanctions to be imposed by trial court); RAP. 18.9 (allowing sanctions to be imposed by appellate court).

## III. Sanctions Under Civil Rule 11

In addition to the inherent authority of courts to control proceedings and litigants, Civil Rule 11 (CR 11) provides courts with an important tool to impose sanctions to curb abusive litigation tactics of litigants and/or attorneys.

### A. CR 11 in the Context of Abusive Litigation

CR 11 was adopted to deter baseless filings, to curb abuses of the judicial system, and to reduce delaying tactics, procedural harassment, and mounting legal costs. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). The Rule requires that every pleading, written motion, or legal memorandum signed by an attorney or self-represented litigant to be:

- Well grounded in fact,
- Warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, and
- Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

A violation of CR 11 and consequent sanctions may be imposed sua sponte by the court. Courts have wide discretion as to how to sanction those violating CR 11. *Snohomish County v. Citybank,* 100 Wn. App. 35, 43, 995 P.2d 119 (2000). Although CR 11 sanctions often involve monetary sanctions, the rule provides discretion for courts to be creative in finding effective solutions to frivolous and improper litigation.

Washington's version of CR 11 is similar to its federal counterpart. Given the overall similarity, Washington state courts may look to the federal courts' interpretation of Federal Rule of Civil Procedure 11 for guidance. *Miller v. Badgley*, 51 Wn. App. 285, 300 n.10, 753 P.2d 530 (1988).

### B. Scope of CR 11

CR 11 applies to every pleading, motion, and legal memorandum submitted to the court. This definition includes affidavits and declarations, as well as advocacy related to documents previously submitted to the court. *Miller*, 51 Wn. App. at 302-03 (holding that an affidavit was improper under CR 11); *MacDonald v. Korum Ford*, 80 Wn. App. 877, 881-82, 912 P.3d 1052 (1996) (holding that party violated CR 11 because it pursued claim even after deposition revealed it to be frivolous).

The rule requires that pleadings, motions, and legal memorandum submitted to the court be signed, either by an attorney of record or by a pro se litigant. A self-represented litigant may be sanctioned under CR 11. *In re Lindquist*, 172 Wn.2d 120, 136, 258 P.3d 9 (2011).

By its terms, CR 11 addresses two types of problems: (1) filings that lack a legal or factual basis or (2) filings interposed for any improper purpose. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217-20, 829 P.2d 1099 (1992). To sanction a party for violating CR 11, a court need only find that the party's filing either lacks a basis or is filed for an improper purpose.

## 1.    Well Grounded in Fact and Law

CR 11 requires an attorney or self-represented litigant to undertake "an inquiry reasonable under the circumstances" prior to signing pleadings, motions and legal memorandum.

A nonexclusive list of factors that a court may consider when assessing whether an inquiry is reasonable and whether the subsequent document is well grounded in fact and law are: (1) time available to the signer; (2) whether a signing attorney accepted a case from another member of the bar; (3) the complexity of the factual and legal issues; and (4) the need for discovery to develop factual circumstances underlying a claim. *Miller*, 51 Wn. App. at 301-02.

The court may also consider the extent of the attorney's reliance upon the client for factual support, but an attorney's "'blind reliance' on a client . . . will seldom constitute a reasonable inquiry." *Id.*

Courts have rejected arguments that CR 11 sanctions will "chill an attorney's enthusiasm or creativity in pursuing new theories in an area of the law." *Layne v. Hyde*, 54 Wn. App. 125, 134-5, 773 P.2d 83 (1989). If a court finds that a legal argument "cannot be supported by any rational argument on the law or facts," then it is improper. *Id.*

## 2.    Improper Purpose

An improper purpose under CR 11 encompasses filings that constitute delaying tactics, procedural harassment, and/or create mounting legal costs. *Bryant*, 119 Wn.2d at 219. The court need not find that the motions are frivolous if successive motions and papers have become so harassing and vexatious that they justify sanctions even if they are not totally frivolous. *Aetna Life Ins. Co. v. Alla Med. Serv., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988).

The court is given wide discretion under CR 11 to determine what constitutes an "improper purpose." *Copper v. Viking Ventures*, 53 Wn. App. 739, 742-43, 770 P.2d 659 (1989). For example, Washington courts have found an improper purpose where:

- An attorney attempted to file multiple affidavits of prejudice. *Suarez v. Newquest*, 70 Wn. App. 827, 834, 855 P.2d 1200 (1993).

- A party threatened to "destroy" the opposing party and force her to "incur substantial legal costs. *In re Cooke*, 93 Wn. App. 526, 529, 969 P.2d 127 (1999).

## C.     Operation of <u>CR 11</u>

Prior to the imposition of sanctions under <u>CR 11</u>, either the moving party or the court itself should notify the offending party of the objectionable conduct and provide him or her with an opportunity to mitigate the sanction. *Biggs*, 124 Wn.2d at 198 n.2, 202. A general notice of possible <u>CR 11</u> sanctions is sufficient. *Id.* If a party, rather than the court, moves for sanctions, it bears the burden to justify the motion.

A court evaluates the claims of a <u>CR 11</u> violation using an objective standard: "whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justifiable." *Bryant*, 119 Wn.2d at 220.

## D.     Permissible Sanctions Under <u>CR 11</u>

If an attorney or a party violates <u>CR 11</u>, courts have wide discretion to craft a sanction that is "appropriate."

<u>CR 11</u> provides: "If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee."

While the sanction language of <u>CR 11</u> explicitly authorizes monetary penalties, Washington courts have emphasized that a court's crafting of "appropriate" sanctions is most important. *Miller*, 51 Wn. App. at 303. What is appropriate will be a sanction that most effectively deters baseless filings and curbs the abuses of the judicial system. *Euster v. City of Spokane*, 110 Wn. App. 212, 39 P.3d 389 (2002). Thus, a sanction imposed under <u>CR 11</u> must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. *Miller*, 51 Wn. App. at 300. The sanction may include nonmonetary directives. *Id.*

The sanctions fashioned by federal courts provide guidance for some possible non-monetary sanctions. For example, federal courts have sanctioned a party or an attorney by:

- Dismissing the entire case with prejudice. *Combs v. Rockwell Intl. Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

- Barring a litigant from filing similar suits without leave of the court. *Stone v. Baum*, 409 F. Supp. 2d 1164, 1171 (D. Ariz. 2005).

- Referring the matter to the state bar association. *Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796, 808 (5th Cir. 2003).

- Resolving all disputes regarding jurisdictional issues in favor of the non-offending party. *Boron v. West Texas Exports, Inc.*, 680 F. Supp. 1532, 1537-38 (S.D. Fla. 1988).

E.    **Use of <u>CR 11</u> Sanctions in Cases Involving Domestic Violence Survivors**

There are few published cases that illustrate the use of <u>CR 11</u> sanctions against an abusive litigant in the context of domestic violence. Indeed, it is been observed that relatively few cases involving sanctions under CR 11 reach the appellate level. Frederic C. Tausand & Lisa L. Johnson, *Current Status of Rule 11 In the Ninth Circuit and Washington State*, 14 U. Puget Sound L. Rev. 419, 443 (1991). However, those cases that do use <u>CR 11</u> against abusive litigants in the context of domestic violence illustrate how the rule may be used to fashion appropriate sanctions.

In *Danvers v. Danvers*, for instance, the court affirmed the district court's imposition of <u>Rule 11</u> sanctions against the plaintiff, the defendant's former husband, because he brought the claim to harass her and to increase her litigation costs. *Danvers v. Danvers*, 959 F.2d 601, 604 (6th Cir. 1992). The sanctions were the amount of the defendant's attorney's fees. The court noted the prior family law issues between the parties, including the "allegation of domestic violence." The husband's complaint "alleged a conspiracy between the defendant and the judge" that he alleged "deprived him of his constitutional right to a parental relationship with his son. These claims match common tactics used by abusers.

Given the language of <u>CR 11</u> and the discretion it provides for effective sanctions, it can be a powerful tool in dealing with abusive litigation in the context of domestic violence. However, courts should be aware that a motion for <u>CR 11</u> sanctions may also be misused by the abuser as a weapon against a survivor.

## IV.    Awarding Attorneys' Fees and Expenses

Washington law authorizes, and in some instances requires, courts to award attorneys' fees and expenses to a party who is subjected to frivolous, vexatious, or abusive litigation. Awards of

attorneys' fees can be an effective way to curb abusive litigation and send an important signal to survivors that the court will not tolerate abusive tactics.

### A. Mandatory Awards of Attorneys' Fees in Family Law Cases

Washington statutes specify a number of instances in which courts are required to award attorneys' fees in family law proceedings when a party brings a baseless motion or otherwise disturbs the integrity of the process without good reason. For example:

- If the court finds that a motion for contempt for noncompliance or interference with a parenting plan was brought without reasonable basis, it "shall order the moving party to pay to the nonmoving party, all costs, reasonable attorneys' fees, and a civil penalty of not less than one hundred dollars." RCW 26.09.160(7).

- When a parenting plan provides an alternative dispute resolution process, "the court shall award attorneys' fees and financial sanctions to the prevailing parent" where it finds that "a parent has used or frustrated the dispute resolution process without good reason." RCW 26.09.184(4)(d).

- If a court finds that a motion to modify a prior decree or parenting plan has been brought in bad faith, the court "shall assess the attorney's fees and court costs of the nonmoving parent against the moving party." RCW 26.09.260(13).

### B. Attorneys' Fees Based on the Resources of the Parties

RCW 26.09.140 provides a court may "from time to time after considering the resources of both parties" order a party to pay costs to the other party as well as attorneys' fees. The court may order that attorneys' fees be paid directly to the attorney, and in such cases, the attorney has the authority to enforce the order.

A trial court has great discretion in setting fee awards, and the appellate court will not reverse the determination unless it is untenable or manifestly unreasonable. *Edwards v. Edwards*, 83 Wn. App. 715, 724-25, 924 P.2d 44 (1996).

In determining whether to award costs and fees pursuant to RCW 26.09.140, courts generally consider the need of the party requesting the fees, the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property. *In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509 (1996).

### C. Attorneys' Fees Based on Intransigence

Courts also consider whether intransigence on the part of one of the parties caused the other party to incur additional legal expenses. *In re Marriage of Crosetto*, 82 Wn. App. 545, 563-64, 918 P.2d 954 (1996). Examples of intransigence may include engaging in "foot-dragging" or obstruction, filing repeated unnecessary motions, or making a trial unduly difficult. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). Once intransigence is established, the court need not consider the financial needs of the party requesting fees. *Crosetto*, 82 Wn. App. at 564; *Mattson v. Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999) (party's intransigence can substantiate a trial court's award of attorney fees, regardless of the factors enunciated in RCW 26.09.140; attorney fees based on intransigence are an equitable remedy).

### D.    Attorneys' Fees in Domestic Violence Protection Order Cases

Following a domestic violence protection order hearing, a court may require the respondent to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees, as well as administrative court costs and service fees. RCW 26.50.060(1)(g).

By contrast, when a petitioner is unsuccessful in seeking a domestic violence protection order, the respondent is not entitled to seek attorneys' fees and costs. *See Hecker v. Cortinas*, 110 Wn. App. 865, 871, 43 P.3d 50 (2002).

### E.    Attorneys' Fees for Frivolous Actions or Defenses

RCW 4.84.185 allows a court to award fees and expenses to the prevailing party upon written findings by the judge that an action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause.

The purpose of the statute is to discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in responding to meritless cases. *Biggs v. Vail*, 119 Wn.2d 129, 137, 830 P.2d 350 (1992). An action is "frivolous" within the meaning of this statute if it cannot be supported by any rational argument on the law or facts. *Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011).

### F.    Attorneys' Fees on Appeal

RCW 26.09.140 authorizes equitable awards of attorneys' fees incurred on appeal, as well as statutory costs. In determining whether to award fees and costs on appeal pursuant to RCW 26.09.140, courts look to the merits of the appeal in addition to the factors listed in the statute. *In re Marriage of Davison*, 112 Wn. App. 251, 260, 48 P.3d 358 (2002).

RAP 14.2 allows an appellate court to award costs to the prevailing party, and RAP 18.1 sets forth the procedures for recovering attorneys' fees or expenses on appeal.

## V. Case Management Techniques for Curbing Abusive Litigation Against Domestic Violence Survivors

As discussed in previous sections, judicial officers have the inherent authority to control court proceedings and to sanction abusive litigants. In addition to the specific mechanisms detailed above, the following case management techniques may be useful in curbing abusive litigation tactics against domestic violence survivors.

### A. Consolidating All Related Cases Before the Same Judicial Officer

Courts have discretion to consolidate multiple cases under one unified cause of action before the same judicial officer. Washington Civil Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation is an important management tool in domestic relations cases where the same parties are involved in protection order, dissolution, custody, or dependency matters that overlap.

If the court has jurisdiction over the parties and no other procedure is established by statute or rule to resolve complex overlapping issues, other civil matters may also be consolidated with domestic relations matters. *Angelo v. Angelo*, 142 Wn. App. 622, 175 P.3d 1096 (2008) (upholding trial court's consolidation of tort and dissolution cases).

It is often not clear to self-represented parties that they may request consolidation or where such motions are properly filed. The procedure is often guided by local court rules. Providing clarity to unrepresented parties on the proper local procedure should be emphasized.

### B. Evaluating Requests for Continuances Carefully

Survivors and advocates report that abusers often attempt to prolong legal proceedings as long as possible in order to cause financial and emotional harm and

to maintain control over the survivor. As a result, requests for continuances should be evaluated carefully in cases involving domestic violence survivors.

The decision to grant or deny a continuance is within the discretion of the trial court and will only be disturbed if the grounds for the decision are manifestly unreasonable or untenable. *State v. Chichester*, 141 Wn. App. 446, 453, 170 P.3d 583 (2007). Courts may consider many factors, including "surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure." *State v. Downing*, 151 Wn.2d 265, 273 87 P.3d 1169 (2004). Ultimately, a decision depends on the facts of the case. *State v. Eller*, 84 Wn.2d 90, 96, 524 P.2d 242 (1974).

1. **Continuances of Motion Hearings**

   Courts will often grant at least one continuance request to each party. However, courts should ensure that each request for a continuance be justified. More than one request for a continuance should trigger the court to assess the factors above, and facts of the case.

   If domestic violence is alleged, the court should consider the possibility that the abuser is using additional continuance requests to drag out the litigation process, to inflict an emotional and financial toll upon the survivor, and/or to discourage the survivor from pursuing the matter.

2. **Parallel Criminal Investigations or Cases**

   In protection order and family law proceedings, requests for continuances due to a concurrent criminal investigation should not be repeatedly granted, and only for a reasonable period of time. Potential Fifth Amendment issues should be identified, and if there is an investigation or charges filed, the respondent should be advised of his rights, and allowed time to consult with an attorney about his or her rights.

   However, the protection order or family law proceedings should not be continued pending the outcome of a criminal investigation, as this places an undue burden on survivors to continue coming to court while the investigation is ongoing. If a continuance is granted on this basis, it should be once, and for a reasonable amount of time to resolve criminal issues. Otherwise, the abuser has been advised of his or her rights and does not have to respond should he or she choose to invoke those rights.

### 3.    Continuing a Trial Date

A trial date may be continued, but only for good cause. CR 40(d). Local rules may require extraordinary circumstances if the deadline for changing the trial date has passed according to a case schedule (*E.g.,* King County Local Civil Rule 40(e)(2)). Judges should exercise discretion in domestic violence cases to prevent the abusive tactic of seeking continuances frequently and without good cause.

### C.    Requiring Confirmation of Motion Hearings

Some local court rules require that litigants confirm family law motions two to three days prior to the scheduled hearing. (*E.g.,* King County Local Family Law Rule 6(c)). The Washington Civil Rules do not require confirmation, but nor do they prohibit the requirement.

Requiring confirmation may help to ensure that motions are not filed frivolously or to further abusive litigation. Courts may use their inherent power to control litigation by ordering confirmation of motions even when not required by local rule.

Further, if a litigant has established a pattern of filing, yet striking or failing to timely confirm a motion hearing, the courts may again use their inherent authority to impose sanctions on the non-complying litigant.

### D.    Ordering Dismissals of Cases

The court may grant an involuntary dismissal of a case when the moving party has failed to prosecute the case, or failed to comply with the rules or court orders. CR 41(b). If no action has occurred in a case for a year, the clerk of court can dismiss the action upon notice to the parties. CR 41(b)(2).

A party can make a motion to dismiss based on failure to prosecute, or sometimes under local rules for failure to follow the case schedule. Other bases for dismissal include lack of jurisdiction or insufficient process/service. CR 12(b).

Courts can curb abusive litigation by dismissing actions that are not properly filed or prosecuted. In addition, a court can help curb abusive litigation by being aware of previous dismissals in a case, or by the parties. In addition, courts may require an abusive litigant to include previous orders of dismissal with any new petition or motion filed.

### E.    Issuing Oral Admonishments and Rulings

Courts should not overlook their ability to make oral rulings or admonishments of the parties before it. As discussed in Section II, the court has the authority and an obligation to restrain abusive litigants and with that comes broad authority to fashion appropriate remedies. If the court is confronted with an abusive litigant, the court has the authority and discretion to orally admonish the litigant and to direct him or her to reform behavior.

A court does not need to enter formal findings or enter any binding order to speak frankly and candidly to the litigants before it. An oral ruling or admonishment may not have any binding effect. *State v. Bryant*, 78 Wn. App. 805, 812, 901 P.2d 1046 (1995) (Oral ruling has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.). Nonetheless, it can provide the parties with a clear understanding of where the court stands.

Survivors report that admonishments are an important and often effective tool for deterring an abusive litigant from continuing to engage in the behavior addressed by the court. Further, if the abusive litigant does not stop engaging in the abusive tactic addressed by the court, then the previous oral ruling or admonishment by the court can be incorporated into a subsequent order as a finding of fact or basis for entering the order. *Pearson v. State Dept. of Labor and Industries,* 164 Wn. App. 426, 441, 262 P.3d 837 (2011) (oral opinion of the court which is later incorporated into a written opinion can be relied upon if the oral opinion is consistent with the findings and judgment of the written opinion).

F. **Screening Motions or Complaints Before Requiring a Response or Appearance from the Non-Moving Party**

When an abusive litigant is engaging in the common tactic of filing numerous documents with the court that require a survivor to make repeated responses and/or court appearances, the court may enter an order indicating that the non-moving party need not respond to a motion or appear for a hearing unless requested by the court. Such a process is similar to local court rules that provide a party should not file a response to a motion for reconsideration unless requested by the court. (*E.g.*, King County Local Civil Rules 59(b)).

G. **Placing Reasonable Limits on Discovery**

Discovery can often be a point in litigation where the parties are permitted under the rules to ask invasive questions or request private documents. With some exceptions, if the discovery request is "reasonably calculated to lead to the discovery of admissible evidence," the request is likely properly within the scope of discovery. CR 26(b).

However, where a party is demonstrating abusive tactics and discovery is ongoing, the court has the authority to limit the scope of discovery in several ways. CR 26(f). A non-exhaustive list of options include:

1. **Require a discovery conference between the parties and/or the court.** Under CR 26(f), the parties may be directed by the court to have a discovery conference, or a party may request to have a discovery conference with the court. The rule allows the parties to limit the scope as necessary, which means that the court has the authority to properly and reasonably limit the scope of discovery in cases where there is a history of domestic violence and/or abusive litigants. The rule also requires each party to participate in good faith.
   **NOTE:** Where one or both of the parties is self-represented and there is any allegation of domestic violence or abusive litigation tactics, the court should step in at the outset and hold a discovery conference to limit the scope and identify any issues that may require a protective order or other relief, such as an *in camera* review of more sensitive materials.

2. **Limit the persons subject to discovery.** Where the survivor can identify persons who may have relevant but limited knowledge, the court may limit the scope of discovery as to a particular person. Similarly, where a party cannot show the relevance of deposing a certain witness, the court may prohibit an abusive litigant from taking that witness's deposition unless there is a showing of good cause.

3. **Limit the length of depositions or the number of interrogatories**.

4. **Grant protective orders for specific issues or other areas of discovery**. If a survivor can identify any issues or areas of discovery that may become unnecessarily invasive or will involve requests for irrelevant information, a protective order can provide the relief needed. Under CR 26(c), either a party or the person from whom discovery is sought, may seek a protective order from the court, which may be granted "where justice requires to protect a person from annoyance, embarrassment, oppression, or undue burden or expense."

5. **Prohibit certain discovery methods to protect a party from harassment/abusive litigant behavior**. CR 26(c) provides the court the authority to protect parties from "annoyance, embarrassment, oppression or undue burden or expense" by limiting, among other things, the methods and the terms and conditions upon which the discovery is to take place.

6. **Impose sanctions for violations.** If the court orders any limitations on discovery pursuant to CR 26(f) and a party fails to obey the order, the court may make such orders in regard to the failure as are just, including a variety of sanctions under CR 37(b).[11] The language of CR 37(b) is clear that the sanctions listed are not an exhaustive list, and that the court has authority to fashion other remedies it deems appropriate to the case. *Burnet v. Spokane Ambulance,* 131 Wn.2d 484, 494, 933 P.2d 1036 (1997) (courts have broad discretion as to the choices of sanctions for violation of a discovery order).

## VI.    Anti-SLAPP Remedies

It is not uncommon for abusers to file civil lawsuits against a survivor based on statements the survivor made in court or in written pleadings. Abusers have also sued survivors for calling law enforcement to report domestic violence.

Washington has adopted an "anti-SLAPP" (Strategic Litigation Against Public Participation) law that provides broad immunity from civil liability to individuals based on their oral or written communications with government agencies, such as the police or the courts. RCW 4.24.510–.525. Advocates have successfully invoked similar anti-SLAPP laws in Washington and in other states to address abusive litigation directed against domestic and sexual violence survivors.[12]

### A.    History of Washington's Anti-SLAPP Law

Washington's anti-SLAPP law was enacted in 1989, and was the first law of its kind in the country. RCW 4.24.500–.510.

In 2002, the Legislature amended the statute to eliminate a requirement that a communication must be made in "good faith" in order for the person being sued to enjoy immunity from civil liability.[13] This change in the law is particularly significant for domestic violence survivors. Eliminating this requirement removes any burden from the survivor to prove that a claim/complaint was made in "good faith" so as not to dissuade survivors from reporting protection order violations or any reports of violence to the police out of fear of being sued.

The 2002 amendments also added a $10,000 statutory penalty against litigants who filed claims in violation of the anti-SLAPP law, with the proviso that such statutory

---

[11] Sanctions could include an order compelling discovery, an award of expenses and attorney's fees, an order refusing to allow the disobedient party to support or oppose designated claims or defenses, an order striking out parts of or entire pleadings or staying further proceedings until order is obeyed, or an order finding contempt.

[12] Wendy Murphy, *Massachusetts Anti-SLAPP statute used to dismiss abuser's retaliatory litigation,* Sexual Assault Report (1998).

[13] Bruce E.H. Johnson & Sarah K. Duran, *A View From the First Amendment Trenches: Washington State's New Protections for Public Discourse and Democracy,* 87 Wash. L. Rev. 495, 511 (2012).

damages may be denied if the court finds that information was communicated in bad faith. Notably, "[b]ad faith does not deny the speaker immunity; it merely prevents him or her from receiving the $10,000 statutory penalty."[14] RCW 4.24.510.

In 2010, the Legislature added new provisions to the anti-SLAPP law, which were separately codified as a new section of the law at RCW 4.24.525. The new provisions expanded the scope of the anti-SLAPP law by providing broader protections for the types of public participation covered under the Act and by establishing special procedures for resolving claims. However, the 2010 statute, as codified at RCW 4.24.525, was found to be unconstitutional by the Washington Supreme Court in 2015. *Davis v. Cox*, ___ Wn.2d ___, 2015 Wash. LEXIS 568 (May 28, 2015).

It should be noted that the decision in *Davis v. Cox* did not concern or strike down the previously enacted provisions of the anti-SLAPP law, which are codified at RCW 4.24.500 - .520.

**B.     Protections Under the Anti-SLAPP Law**

     **1.     Civil immunity from claims based on communications to government agencies**: RCW 4.24.510 provides that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization."

     **2.     Civil immunity does not depend on whether a communication was made in good faith:**  RCW 4.24.510 provides immunity regardless of whether a complaint to a government agency was made in good faith.  In 2002, the Legislature specifically amended the anti-SLAPP statute to remove a "good faith" requirement for civil immunity based on communications protected by the law. *See Bailey v. State*, 147 Wn. App. 251, 261, 191 P.3d 1285 (2008) (noting "[f]ormer RCW 4.24.510 contained a good faith requirement.  This phrase was deleted by amendment [in 2002]."  As a result, courts have held that civil immunity attaches under RCW 4.24.510 without the need to determine whether a communication to a government agency was made in good faith. *Id.*; *see also Lowe v. Rowe*, 173 Wn. App. 253, 260, 294 P.3d 6 (2012) (noting "the 2002 amendments eliminated the 'good faith' reporting language of the 1989 law").

---

[14] *Id*. at 512.

3. **Mandatory attorney fee and costs provisions:** <u>RCW 4.24.510</u> provides a mandatory award of attorney's fees and costs to a party who prevails in establishing the anti-SLAPP defense provided by the statute. The award of attorney's fees does not depend on whether a communication was made in good faith. *See Lowe*, 173 Wn. App. at 264 (noting that party was entitled to attorney's fees under anti-SLAPP statute for successfully defending immunity)..

4. **Statutory damages:** <u>RCW 4.24.510</u> provides that a party prevailing on an anti-SLAPP defense shall receive statutory damages in the amount of $10,000, but further provides that "[s]tatutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." As a result, the court may deny statutory damages if it determines that a prevailing party's communication to a government agency was made in bad faith. *Lowe*, 173 Wn. App. at 262.

5. **How can Anti-SLAPP laws be used against domestic violence survivors?** It is important to recognize the potential downside that anti-SLAPP laws can represent for domestic violence survivors. Anti-SLAPP laws can also be used as a weapon against survivors.[15] For instance, survivors may be prohibited from suing their abusers when the abuser attempts to harm them by making a false report to child protective services, by making a report to immigration officials, or by seeking retaliatory protection orders against the survivor, and against the survivor's friends and family.

---

[15] Barbara Hart, *Litigation Abuse: DV and the Law*, National Bulletin on Domestic Violence Prevention, July 2011, Vol. 17, No. 7.

## Selected Resources

1. Arizona Coalition Against Domestic Violence, *Battered Mothers' Testimony Project: A Human Rights Approach to Child Custody and Domestic Violence* (June 2003) (*available at http://www.thelizlibrary.org/therapeutic-jurisprudence/AZ-Battered-Mothers-Testimony-Project-Report.pdf*).

2. Battered Mothers' Testimony Project at the Wellesley Centers for Women, *Battered Mothers Speak Out: A Human Rights Report on Domestic Violence and Child Custody in the Massachusetts Family Courts* (Nov. 2002).

3. Lundy Bancroft, *The Batterer as Parent: Addressing the Impact of Domestic Violence on Family Dynamics* (2d ed. 2011).

4. Barry Goldstein & Elizabeth Liu, *Representing the Domestic Violence Survivor* (2013).

5. Mo Therese Hannah & Barry Goldstein eds., *Domestic Violence, Abuse, & Child Custody: Legal Strategies & Policy Issues* (2010).

6. Barbara Hart, *Litigation Abuse: DV and the Law*, National Bulletin on Domestic Violence Prevention, July 2011, Vol. 17, No. 7.

7. Peter G. Jaffe *et al.*, *Common Misconceptions in Addressing Domestic Violence in Child Custody Disputes,* 54 Juv. and Family Ct. J. 57 (2003).

8. Bruce E.H. Johnson & Sarah K. Duran, *A View From the First Amendment Trenches: Washington State's New Protections for Public Discourse and Democracy*, 87 Washington Law Review 495, 497 (2012).

9. Esther L. Lenkinski *et al.*, *Legal Bullying: Abusive Litigation Within Family Law Proceedings*, 22 Canadian Fam. L. Quarterly 337 (2004).

10. Donna J. King, *Naming the Judicial Terrorist: An Expose of an Abuser's Successful Use of a Judicial Proceeding for Continued Domestic Violence*, 1 Tenn. J. of Race, Gender, & Social Justice 153 (2012) (*available at* http://trace.tennessee.edu/rgsj/vol1/iss1/6/).

11. Susan L. Miller and Nicole L. Smolter; *"Paper Abuse": When All Else Fails, Batterers Use Procedural Stalking*, 17 Violence Against Women 637 (2011) (*available at http://vaw.sagepub.com/content/early/2011/04/28/1077801211407290.full.pdf*).

12. National Council of Juvenile & Family Court Judges, *Batterer Manipulation of the Courts to Further Their Abuse, and Remedies for Judges*, Synergy, Vol. 12 No. 1 (2008) (*available at http://www.ncjfcj.org/sites/default/files/synergy-12-1.pdf*).

13. National Council of Juvenile & Family Court Judges, *A Judicial Guide to Child Safety in Custody Cases*, at 22-24 (2008) (*available at* http://www.ncjfcj.org/sites/default/files/judicial%20guide_0_0.pdf).

14. Leah J. Pollema, *Beyond the Bounds of Zealous Advocacy: The Prevalence of Abusive Litigation in Family Law and the Need for Tort Remedies*, 75 Univ. Mo. K.C. L. Rev. 1107 (2007).

15. Mary Przekop, *One More Battleground: Domestic Violence, Child Custody, and the Batterers' Relentless Pursuit of their Victims Through the Courts*, 9 Seattle J. Soc. Just. 1053 (2011).

16. Public Participation Project, *State Anti-SLAPP Laws and Judicial Decisions* (*available at* http://www.anti-slapp.org/your-states-free-speech-protection).

17. Kim Y. Slote *et al.*, *Battered Mothers Speak Out: Participatory Human Rights Documentation as a Model for Research and Activism in the United States*, 11 Violence Against Women 1367 (2005).

18. Rita Smith and Pamela Coukos, *Fairness and Accuracy in Evaluations of Domestic Violence and Child Abuse in Custody Determinations*. 36 No. 4 Judges J. 38 (1997).

19. Andrea Vollans, *Court-Related Abuse and Harassment: Leaving an Abuser Can Be Harder Than Staying*; YWCA Vancouver, Canada (2010) (*available at http://www.bcwomens.ca/NR/rdonlyres/8D65CADE-8541-4398-B264-7C28CED7D208/50364/LitigationAbuseFINAL.pdf*).

20. Joan Zorza, *Batterer Manipulation and Retaliation in the Courts: A Largely Unrecognized Phenomenon Sometimes Encouraged by Court Practices*. 3 Domestic Violence Report 67 (1998) (*available at http://www.ncadv.org/conferences/2012handouts/Zorza,%20Joan--Batterer.Manipulation.&.Retaliation.in.Courts.pdf*).

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★
# EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

EP13F July 2013   OD: 12.5 x 9.5

*EMS*

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.



OCT 10 PM 4:03

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT)   PHONE ( 253 ) 592-1578

Claire K. Comfort
1212 4th Street SE, Apt 801
Washington, DC 20003

**USPS® Corporate Acct. No.**

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)   PHONE ( 212 ) 805-0175

U.S. District Court for the
Southern District of New York
Pro Se Intake Unit
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 200
New York, NY

ZIP + 4® (U.S. ADDRESSES ONLY)
1 0 0 0 7 - 1 3 1 2

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code    Day of Delivery
☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

Scheduled Delivery Date (MM/DD/YY)   12-8-18

Scheduled Delivery Time   ☐ 10:30 AM   ☐ 12 NOON   ☐ 3:00 PM

Date Accepted (MM/DD/YY)   10-10-18

Time Accepted   1:10   ☐ AM   ☑ PM

Postage   $ 24.70

Return Receipt Fee

Live Animal Transportation Fee

Insurance Fee   COD Fee

Total Postage & Fees   $ 24.70

Weight   lbs.   oz.

Flat Rate   ☐

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM   Employee Signature
Accepted By/Employee Initials

LABEL 11-B, JANUARY 2014    PSN 7690-02-000-9996



UNITED STATES POSTAL SERVICE®

# PRIORITY
## ★ MAIL ★
# EXPRESS™

EK 943736724 US

U.S. POSTAGE PAID
PME 1-DAY
WASHINGTON, DC
20024
OCT 06, 18
AMOUNT
$24.70
R2305K142823-10

1007

10007

1-ORIGIN POST OFFICE COPY

VISIT US AT USPS.COM®